# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| ANITA J. BRYSON,<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No.: 4:17-cv-00144-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Anita J. Bryson's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On August 3, 2013, Petitioner Anita J. Bryson ("Petitioner") protectively applied for Title II disability and disability insurance benefits. (AR 22.) Petitioner alleged disability beginning October 1, 2012. (*Id.*) Her claim was denied initially on January 9, 2014 and then again on reconsideration on March 4, 2014. (*Id.*) On March 19, 2014, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and testified at a hearing held on January 13, 2016 in Pocatello, Idaho. (*Id.*) Impartial vocational expert Kent Granat also appeared and testified at the hearing. (*Id.*)

---

[1] The pleading was titled and framed as a complaint, but it is more properly treated as a petition for review, as it seeks review of a final agency action.

MEMORANDUM DECISION AND ORDER – 1

On January 28, 2016, ALJ Lloyd E. Hartford issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her alleged onset date through the date of the decision. (AR 28.) Petitioner timely requested review from the Appeals Council on or about February 10, 2016. (AR 14, 18.) On January 31, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted her administrative remedies, Petitioner filed this case. She contends that "[t]he conclusions and findings of fact of the [respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 2 (Dkt. 1). Petitioner argues that the ALJ's residual functional capacity assessment is unsupported by substantial evidence and that the ALJ's reasons for discounting Petitioner's credibility were inadequate. *See generally* Pet'r's Mem. ISO Pet. for Review (Dkt. 16). Petitioner asks for reversal and a holding that she is disabled, or, in the alternative, that the case be remanded for a further hearing. Pet. for Review 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§

404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2012 through the date of the ALJ's decision. (AR 24.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, through the date last insured, Petitioner had the following severe impairments: "degenerative disk disease of the lumbar spine and generalized osteoarthritis." (AR 24.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 24–25.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the RFC:

> to perform sedentary work as defined in 20 CFR 40.1567(a) except she can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; can stand and walk 4 hours and sit 8 hours of an 8-hour workday (with normal breaks); can occasionally climb ramps and stairs, stoop, and crawl; can frequently

kneel and crouch; and can never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to vibration.

(AR 25.) Based on Petitioner's RFC, the ALJ further found that Petitioner was capable of performing her past relevant work as a Police Dispatcher. (AR 28.) Accordingly, he concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from October 1, 2012, through the date of this decision." (AR 28.) The ALJ did not reach the fifth step of the sequential analysis.

**B.     Analysis**

Petitioner raises two issues with the ALJ's decision. First, she argues the RFC the ALJ assigned is unsupported by substantial evidence because the ALJ failed to follow the treating physician rule. Second, she argues the ALJ's credibility determination with respect to Petitioner is unsupported by substantial evidence. *See generally* Pet'r's Mem. ISO Pet. for Review (Dkt. 16). Each argument will be addressed in turn.

**1.    The RFC Was Not Supported By Substantial Evidence.**

Petitioner contends the ALJ's RFC assessment is unsupported by substantial evidence because he improperly discounted the medical opinions of treating provider Dr. Brad C. Erikson, D.O., and because he failed to incorporate into the RFC a portion of the medical opinion of consultative examiner Dr. Charles Boge, M.D., despite giving his opinion significant weight. Pet'r's Mem. ISO Pet. for Review 11–18 (Dkt. 16).

An ALJ must state "clear and convincing reasons that are supported by substantial evidence" to reject an uncontradicted opinion of a treating physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). To reject a contradicted opinion of a treating physician, an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. The ALJ Erred in Rejecting Dr. Erikson's Medical Opinion.

Dr. Erikson is a treating provider who rendered three separate medical opinions in this case. (AR 382, 409–411, 412.) In March 2014, he opined that Petitioner "is not able to be gainfully employed. This mainly stems from not being able to stand for very long periods of time or sit for very long periods of time without discomfort in her back, feet or ankles. It is of my belief that she is not a candidate to be rehabilitated for work, unless there is something extremely light duty, but even desk work would probably be problematic." (AR 382.) In January 2016, he further opined that Petitioner "still lives in significant pain with a constant dull ache in her legs and back that does not allow her to work." (AR 412.) Finally, Dr. Erikson completed a physical assessment form in January 2016 in which he gave his opinion as to several work-related limitations: Petitioner could sit only three hours and stand or walk only one hour in an 8-hour workday, Petitioner would need to take unscheduled breaks multiple times per hour during a workday, and Petitioner would likely be absent from work more than four times a month as a result of her impairments. (AR 409–410.) Dr. Erikson also indicated on the form that Petitioner's impairments are reasonably consistent with the symptoms and functional limitations described on the form. (AR 410.)

> In evaluating Dr. Erikson's medical opinions, the ALJ stated as follows:
>
> The claimant's treating physician, Brad Erikson, DO, provided several statements regarding the claimant's disability. Doctor Erikson provided a letter dated March of 2014 indicating the claimant had multiple areas of degenerative joint disease (supported by treatment records addressing degenerative disk disease of the lumbar spine and generalized osteoarthritis). She responded well to prednisone medication which allowed her to do some light housework, but he opined the claimant was "not able to be gainfully employed" except for "something extremely light duty, but even desk work would probably be problematic" (7F/l). This opinion by its own conclusions does not rule out all work, was based on a very short treatment relationship (6 months at that time), and relies too much on subjective reporting of symptoms. In another letter from January 2016, he described that he had treated the claimant for about two years for "a constant dull ache in her legs and back that

MEMORANDUM DECISION AND ORDER – 7

does not allow her to work" (13F). He opined, "It is my professional opinion that she does have a significant disability unfortunately, mostly related to degenerative joint disease with multiple joints involved. In the neck, low back, legs, hips, feet and ankles." The issue of disability is reserved to the Commissioner pursuant to SSR 96-5p. His description of her limitation and difficulty with past work again appeared to be based mostly on the claimant's subjective reports. Doctor Erikson also completed a physical Medical Source Statement (12F). He indicated the claimant could sit 3 hours and stand or walk 1 hour of an 8-hour workday, would need multiple breaks per hour and more than 4 days off per month, and could lift only 10 pounds or less (12F/l-2). Although Dr. Erikson is a treating source, his opinion is not well supported by objective findings or the claimant's activities of daily living. He labels the claimant as disabled, but also equivocates about what activities she can do. For these reasons, the undersigned gives these opinions little weight.

(AR 27–28.) Thus, the reasons the ALJ gave for rejecting Dr. Erikson's opinions were that (1) his treatment relationship with Petitioner was short; (2) he relied too much on Petitioner's subjective reporting of symptoms; (3) his opinions are not well-supported by objective findings or the claimant's activities of daily living; and (4) he equivocates about what activities she can do. (*Id.*) Each of these reasons will be considered in turn. Because two State Disability Determination Services doctors, Ward E. Dickey, M.D., and P. Michael O'Brien, M.D., contradicted Dr. Erikson's opinions (AR 28), the ALJ was required to provide specific and legitimate reasons for rejecting such opinions.

Social Security regulations provide that "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i). In this case, the record reflects that Dr. Erikson first treated Petitioner on or before September 5, 2013. (AR 337.) Thus, the ALJ was correct in stating that Dr. Erikson's March 2014 letter was based on a treatment relationship of

six months.  However, the ALJ did not discuss whether the six-month period from October 2013 to March 2014 was long enough for Dr. Erikson "to have obtained a longitudinal picture of [Petitioner's] impairment."  Nor did the ALJ address the fact that Dr. Erikson's March 2014 opinion was broadly consistent with his subsequent opinions rendered in January 2016.  Each of Dr. Erikson's medical opinions of record documents his conclusion that Petitioner is disabled.  Because the ALJ mentioned this consistency, without remarking that Dr. Erikson's opinions were in any way inconsistent with each other, it was improper for the ALJ to discount the earlier opinion based on a short treatment relationship.

       The ALJ faulted Dr. Erikson for relying too much on Petitioner's subjective reporting of symptoms.  However, the ALJ did not discuss or acknowledge objective medical findings in the record that tend to support Dr. Erikson's opinions.  At Petitioner's first appointment with Dr. Erikson, she reported "chronic back pain and foot pain."  (AR 328.)  Dr. Erikson diagnosed her with degenerative joint disease (osteoarthrosis), foot pain, lumbago, and fatigue.  (AR 329.)  Independently, Dr. Michael C. Biddulph, M.D., interpreted Petitioner's lumbar spine x-ray by recording the following findings: "There is severe degenerative disc disease at L4-L5 and L5-S1.  There is left lateral subluxation of L4 on L5.  The other lumbar interspaces are normal in height.  No fractures are seen.  Degenerative arthritis is noted in the lower lumbar facet joints.  There is mild leftward lumbar scoliosis."  (AR 381.)  These findings were made in January 2014, just two months before the first of Dr. Erikson's opinions was rendered.  Consultative examiner Dr. Charles Boge, M.D., opined, also in January 2014, that Petitioner was "moderately limited" with respect to sitting, standing, walking, lifting, and carrying "based on medical findings expressing this examiner's opinion of the claimant's ability to do work-related physical activities."  (AR 377.)  Moreover, the ALJ also indicated that Dr. Erikson's March 2014 opinion was "supported

by treatment records addressing degenerative disk disease of the lumbar spine and generalized osteoarthritis." (AR 27.)

Dr. Erikson's medical opinions do not expressly refer to other medical records in the case file, whether his own or those of another source. But the opinions likewise do not expressly state that they are based on Petitioner's subjective reporting of symptoms. Although the ALJ found the opinions were overly reliant on such subjective reporting, he did not identify any evidence or otherwise explain why he believed this to be the case. In such a setting, where there is other evidence in the record (both from Dr. Erikson and from other sources) to support Dr. Erikson's opinions, and where the ALJ himself acknowledged that some treatment records supported the March 2014 opinion, the ALJ needed to support his finding with substantial evidence for it to survive judicial review. He did not do so.

The ALJ did not specifically identify objective findings in the record that he found to be inconsistent with Dr. Erikson's medical opinions. Nor did he identify specific activities of daily living that contradicted such opinions. This alone establishes that the ALJ did not provide a "specific and legitimate reason[] that [is] supported by substantial evidence" for rejecting Dr. Erikson's opinions on this basis. Moreover, as mentioned *supra*, the record includes independent findings that are at least broadly consistent with Dr. Erikson's medical opinions. Furthermore, the ALJ found that

> Regarding her activities of daily living, [Petitioner] states that she has limited social activities and mostly watches TV for leisure. Dressing, bathing and caring for hair takes more time than it used to, and she has difficulty sleeping for more than a few hours due to pain, she wrote (9E/2). However, the claimant indicated she is able to shop in stores once or twice a week, drive, go outside for fresh air, clean her house, do some lawn mowing, feed and care for pets, and prepare meals.

(AR 25.) This discussion occurred two pages earlier in the ALJ's decision and is not otherwise connected to his assessment of Dr. Erikson's opinions except by the phrase "activities of daily

life." The Court does not read anything in the ALJ's decision about Petitioner's stated activities of daily life that is incompatible or inconsistent with Dr. Erikson's medical opinions. Nothing in the ALJ's statement on her activities suggests that Petitioner could sustain such activities in a work setting for long enough to qualify as substantial gainful activity. Thus, even assuming such activities are the ones the ALJ had in mind when rejecting those opinions, the ALJ has not met the standard to reject the opinions.

Finally, the ALJ states that Dr. Erikson "labels the claimant as disabled, but also equivocates about what activities she can do." (AR 28.) This assertion is only partially correct. Dr. Erikson's March 2014 opinion expressed uncertainty about whether Petitioner could perform work that "is something extremely light duty," opining that "even desk work would probably be problematic." (AR 382.) The Court is persuaded that the ALJ did not err to the extent that he rejected this opinion because it was ambiguous about the extent of Petitioner's functional limitations.[2] Dr. Erikson's January 2016 letter falls into the same category. It was not uncertain or ambiguous like the March 2014 letter, but it nonetheless was silent as to the extent of Petitioner's functional limitations besides expressing the ultimate opinion that she is disabled. (AR 412.)

However, Dr. Erikson's physical assessment form from January 2016 did not equivocate about the activities Petitioner could perform. (AR 409–411.) It contained Dr. Erikson's opinion as to numerous concrete limitations about Petitioner's limitations and requirements during an 8-hour workday, such as her need to recline or lie down in excess of typical break periods, her inability to sit for more than three hours or stand or walk for more than one hour per workday,

---

[2] Moreover, the ultimate question of whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

her need to take unscheduled breaks of 5–10 minutes multiple times per hour, and the likelihood that she would be absent from work more than four times per month due to her impairments. (*Id.*) Each of these opinions was stated in definite, certain terms; nothing about any of them was equivocal. The ALJ was free to disagree with such opinions, but to do so properly he needed to provide specific and legitimate reasons for doing so. Stating that these unequivocal opinions were equivocal was not sufficient.

In sum, the ALJ improperly rejected one of Dr. Erikson's medical opinions, a physical assessment that appears in the administrative record at pages 409–411. Hence, the assessed RFC was not based on all of the relevant evidence of record. For this reason, the ALJ's decision cannot stand and Petitioner's petition must be granted.

### B. The ALJ's RFC Was Inconsistent With Dr. Boge's Credited Opinion.

Petitioner also contends the ALJ erred in assessing an RFC that was inconsistent with the opinion of Dr. Boge, the consulting examiner whose opinion the ALJ credited. (AR 27.) Dr. Boge opined, and the ALJ repeated, that Petitioner was "moderately limited" in sitting. (AR 27, 377.) Dr. Boge's opinion in this regard was "based on medical findings expressing this examiner's opinion of the claimant's ability to do work-related physical activities." (AR 377.) The ALJ gave the opinion "significant weight because it addresses specific functioning, compares the claimant's subjective reports with objective medical evidence, and is based on Dr. Boge's expertise and familiarity with the Social Security Administration's program of disability." (AR 27.)

Yet the ALJ assessed Petitioner as having the RFC to "sit 8 hours of an 8-hour workday (with normal breaks)." (AR 25.) He also acknowledged Petitioner's allegations that she

"stopped working as a police dispatcher in 2012 due to difficulty sitting with low back pain" and that "she cannot sit for an entire shift due to back pain." (AR 25.)

The Court cannot reconcile the ALJ's RFC imposing no limitation on Petitioner's sitting with his giving significant weight to Dr. Boge's opinion that she was moderately limited in sitting. Regardless of how one might define "moderately limited" sitting, it cannot be that sitting 8 hours of an 8-hour work day – which is no limitation at all – can be called a moderate limitation.[3] The ALJ must fully account for all aspects of a State agency opinion that is purportedly assigned significant weight. *Williams v. Berryhill*, 2017 WL 1957127 at *3 (W.D. Wash., May 11, 2017); *see also* SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") Thus, the Court is persuaded that the ALJ committed reversible error by simultaneously giving significant weight to the opinion of a consultative examiner while assessing an RFC that is incompatible with such opinion.

The ALJ's RFC assessment was not supported by substantial evidence both because it excluded the improperly-rejected medical opinion of Dr. Erikson and because it failed to account for the sitting limitation expressed in the credited opinion of Dr. Boge.

**2. Petitioner's Credibility Determination Was Not Supported by Substantial Evidence.**

Petitioner contends the ALJ erred in discounting her credibility. Pet'r's Mem. ISO Pet. for Review 18–22 (Dkt. 16.) An ALJ may reject a claimant's testimony about the severity of her

---

[3] Respondent argues that SSA regulations define moderate limitation as "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Resp't's Br. 7 (Dkt. 17). But the quoted definition deal with evaluating the effects of a claimant's mental disorder, rather than the extent of her physical limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, at 12.00F2c; 81 Fed. Reg. 66137, 66164 (Sept. 26, 2016). The Court finds that the quoted definition does not apply here.

symptoms only by offering specific, clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ's decision did not address Petitioner's credibility in detail. The ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely credible for the reasons explained in this decision. More significantly, the medical evidence of record does not substantiate the claimant's subjective allegations of limitations and allegation of total disability." (AR 26.) Immediately following this statement, the ALJ spent the next two pages discussing medical evidence of record detailing various physical examinations performed on Petitioner. (AR 26–27.) Although such discussion includes several instances where the ALJ referred to normal physiology or only mild physical issues, notably missing from the decision is any further mention of Petitioner's credibility. Rather, the focus is on the ALJ's evaluation of the weight of the medical opinions in the record. Moreover, the ALJ's treatment of the evidence serves more as a neutral recitation of what the record contains rather than a critical evaluation of the significance or meaning of its contents. Additionally, Petitioner points out that the ALJ's decision does not address Dr. Biddulph's findings from a January 2014 x-ray that included "severe degenerative disc disease." Pet'r's Reply Mem. 3 (Dkt. 18); AR 381.

The reason the ALJ gave for discounting Petitioner's credibility is that her allegations of the limiting effects of her impairment are not supported by the medical evidence of record. As an initial matter, the Court's conclusion, described *supra*, that the ALJ erred in rejecting Dr. Erikson's medical opinion has the effect of undermining the ALJ's credibility determination as to Petitioner because such opinion supports Petitioner's allegations. More to the point, however,

is that the ALJ's reason for rejecting Petitioner's credibility does not meet the standard of being specific, clear, and convincing.

The ALJ may have intended to comment on Petitioner's credibility when he mentioned that the Petitioner "indicated she wanted to observe and consider her options rather than pursue injections or surgery." (AR 26.) Although this might be read to suggest that the ALJ disbelieved the alleged severity of Petitioner's impairments because she was not more proactive in seeking treatment, he did not say so. The Court will not presume as to the ALJ's beliefs or intentions in his assessment of Petitioner's credibility. On this record, and upon carefully reading the ALJ's decision, the Court is persuaded that the ALJ did not provide specific, clear, and convincing reasons to support his credibility determination. Accordingly, the ALJ erred in rejecting Petitioner's credibility and her petition will be granted on this issue.

Early in the hearing, while the ALJ was asking Petitioner about Dr. Erikson's treatment of her, the ALJ described his own personal experience with seeing a medical source for back pain:

> Q    Well, what I'm looking at is this: I've got a doctor that does exactly the same thing for me regarding my back. I've had two back surgeries, and that's what my primary family doctor does. I have a specialist that I go see for my back when I'm having flare-ups in my back, and that's my orthopedic surgeon. That's -- and he's not your orthopedic surgeon. And other than giving you the medications, checking your blood pressure regarding toxicity, et cetera, providing different types of exercises and recommendations, that's all he does in respect to treating your disabling impairments?

(AR 43.) Later, while the ALJ was questioning Petitioner about how long she can sit or stand, the following exchange occurred:

> Q    Okay. And so after you've stood for 10 to 15 minutes, you generally have to lie down?
> A    Or sit down. One of the two.
> Q    Or sit down. All right. And that's because of what reason?

> A   Well, if I'm, like, trying to cook something, I just try to rest enough till I can go back and continue and finish what I'm cook or, you know, if I'm --
> Q   Well --
> A   -- in the middle of something that -- a project that I want to try to finish, you know, I'll rest until I feel that I can continue and try to get things -- get that thing done.
> Q   Well, see, now, that response indicated to me that you're not having a lot of pain because you're just going to lie down to rest and then you get up and go do something and then continues what you're doing.
> I was anticipating you'd tell me the reason why you have to lie down after standing for 10 or 15 minutes was due to your severe back pain, your leg pain, your ankle pain, your feet pain.
> A   Well --
> Q   But it's just the rest?
> A   No, sir. It would be because of the pain. Just the duration of how long I would be down would be depending on how pressing the issue at hand was.

(AR 53–54.) Finally, the ALJ questioned Petitioner's reason for leaving her job:

> Q   So you were working 12-hour shifts for five years?
> A   Yes.
> Q   So maybe that's the reason why you decided to terminate that job; you got tired of working 12 hours a day, five days a week?[4]
> A   No. Actually, it was a very fulfilling -- it was a good job. You felt like you were helping people and doing good for the community and --
> Q   Well, then --
> A   It was an important job. I was sorry I had to leave.
> Q   Well, then, you know what that indicates to me? That your back and your conditions couldn't have been too serious if you could sit 12 straight hours and never get a break except three breaks in 12 hours, every 4 hours. How bad could your physical condition have been then?
> A   Well, it got worse over time.
> Q   Yeah. Well --
> A   It certainly did.
> Q   -- I could understand that too, and I can certainly understand the fact that after working the job 12 hours a day, five days a week for five years you'd finally get tired of it and say, well, I'm not going to do this anymore. I can understand that. So that's another factor.
> A   Well, and then if you also consider the fact that I was a detective sergeant when I resigned -- or when I retired in Utah and then I went to a dispatcher, that was a considerable step backward as far as rank or pay or level of skill necessary to perform a job. But I was very proud of being a public servant.

---

[4] Petitioner elsewhere testified that "our work [week] was two 8-hour shifts, two 12-hour shifts. But because of staffing, many of those 8-hour shifts turned into 12s. So it wouldn't be uncommon that I might work four 12s. It wasn't scheduled that way." (AR 78.)

MEMORANDUM DECISION AND ORDER – 16

| | |
|---|---|
| | I'm very -- it was important to me to be able to help people and to have a purpose in life. I felt like it was a job that I was very proud of having, and it wasn't just a job that I was tired of so I thought I'd quit. |
| Q | Well -- |
| A | I was very sorry to leave. |
| Q | -- I -- I certainly understand what you're saying. I'm a public servant too in this job that I have. We're supposed to do 500 to 700 hearings a year -- management says that, and they think we can spend two point five hours doing each case, from reviewing the case to holding the hearing to driving to the hearing, et cetera. And my job requires me to travel all over Montana and Wyoming and Idaho. And -- <br> But the long and the short is this: I have reached the point where I physically and mentally don't work all the hours I had to do. I work 12 hours or more in other words to do my job. So I certainly understand what you say, but there is a point where mentally and physically you become exhausted -- maybe exhausted's the wrong word, but you reach that point of diminishing returns. |

(AR 76–78.)

In context, it is inescapable that the ALJ did not find Petitioner credible. What is not clear is *why*. Because the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for questioning Petitioner's credibility, the ALJ erred.

## IV. CONCLUSION

Petitioner has shown that the ALJ committed reversible legal error by assessing an RFC unsupported by substantial evidence and by improperly rejecting Petitioner's credibility. The ALJ did not provide adequate justification for rejecting the medical opinion of treating provider Dr. Erikson. The ALJ also assessed an RFC that was inconsistent with the credited opinion of consultative examiner Dr. Boge. Finally, the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Petitioner's credibility. For these reasons, the ALJ's decision is reversed. The appropriate remedy in this case is to remand for further proceedings.

# V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED**, and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: September 28, 2018

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge